1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADAM T.,

                              Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

CASE NO. C19-5861 BHS

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING
FOR FURTHER PROCEEDINGS

## I.   BASIC DATA

Type of Benefits Sought:

(X) Disability Insurance

( ) Supplemental Security Income

Plaintiff's:

Sex:  Male

Age: 30 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff:  Bipolar II disorder, cervicalgia with two
fusions, spina bifida, posttraumatic stress disorder ("PTSD") with anxiety and depression,
degenerative disc disease, arm and hand numbness, chronic low back pain, lumbar
arthropathy, and tinnitus.  *See* Admin. Record ("AR") (Dkt. # 7) at 336–37.

Disability Allegedly Began:  December 13, 2014

Principal Previous Work Experience:  Welder, security guard, tractor-trailer truck driver.

Education Level Achieved by Plaintiff:  Some college.

1

## II.    PROCEDURAL HISTORY—ADMINISTRATIVE

2

Before Administrative Law Judge ("ALJ") Gerald Hill:

3

Date of Hearing:  January 3, 2019[1]

4

Date of Decision:  June 5, 2019

5

Appears in Record at:  AR at 17–29

6

Summary of Decision:

7

The claimant has not engaged in substantial gainful activity since December 13, 2014, the alleged onset date.  *See* 20 C.F.R. §§ 404.1571–76.

8

9

The claimant has the following severe impairments:  Degenerative disc disease, partial hearing loss, depression, and PTSD.  *See* 20 C.F.R. § 404.1520(c).

10

11

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

12

13

The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with exceptions. He can lift and carry 20 pounds occasionally and 10 pounds frequently.  He can stand/walk for about six hours total in an eight-hour work day, and 30 minutes at one time.  He can sit for about six hours total in an eight-hour work day, and 60 minutes at a time.  He can occasionally climb ladders, ropes, and scaffolds, stoop, and reach overhead with the left non-dominant arm.  He can frequently balance, reach in all directions but overhead with the left arm, and feel with the left hand.  He should avoid concentrated exposure to noise, vibrations, and hazards.  He can tolerate superficial contact with others.  He cannot perform work providing direct service to the public, but can tolerate brief, incidental interactions.  He cannot perform tandem or team work.

14

15

16

17

18

19

20

The claimant is unable to perform any past relevant work.  *See* 20 C.F.R. § 404.1565.

21

---

[1] There were two prior hearings in this matter, both of which related to an earlier decision by ALJ Marilyn Mauer.  *See* AR 234–71.

22

The claimant was a younger individual (age 18–49) on the alleged disability onset date.  *See* 20 C.F.R. § 404.1563.

The claimant has at least a high school education and is able to communicate in English.  *See* 20 C.F.R. § 404.1564.

Transferability of job skills is not an issue because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled, whether or not the claimant has transferable job skills.  *See* Social Security Ruling 82–41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  *See* 20 C.F.R. §§ 404.1569, 404.1569(a).

Before Appeals Council:

Date of Decision:  August 23, 2019

Appears in Record at:  AR at 1–4

Summary of Decision:  Denied review.

### III.    PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's

denial of Social Security benefits when the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than

a preponderance, and is such relevant evidence as a reasonable mind might accept as

1  adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

2  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for

3  determining credibility, resolving conflicts in medical testimony, and resolving any other

4  ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

5  While the Court is required to examine the record as a whole, it may neither reweigh the

6  evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278

7  F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one

8  rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

9  must be upheld." *Id.*

10              V.        EVALUATING DISABILITY

11        Plaintiff bears the burden of proving he is disabled within the meaning of the

12  Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The

13  Act defines disability as the "inability to engage in any substantial gainful activity" due to

14  a physical or mental impairment which has lasted, or is expected to last, for a continuous

15  period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A claimant is disabled

16  under the Act only if his impairments are of such severity that he is unable to do his

17  previous work, and cannot, considering his age, education, and work experience, engage

18  in any other substantial gainful activity existing in the national economy. 42 U.S.C.

19  § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

20        The Commissioner has established a five-step sequential evaluation process for

21  determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R.

22  § 404.1520. The claimant bears the burden of proof during steps one through four.

1  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step

2  five, the burden shifts to the Commissioner. *Id.*

3  ### VI.   ISSUES ON APPEAL

4       A.   Whether the ALJ erred in failing to address whether to reopen Plaintiff's

5  prior claim.

6       B.   Whether the ALJ erred in discounting Plaintiff's symptom testimony.

7       C.   Whether the ALJ erred in evaluating Plaintiff's doctors' opinions.

8       D.   Whether the ALJ erred in rejecting lay witness testimony.

9       E.   Whether the ALJ erred in assessing Plaintiff's RFC by failing to include

10  limitations caused by Plaintiff's alleged migraine headaches and bipolar disorder.

11  ### VII.   DISCUSSION

12       The Court may set aside the Commissioner's denial of Social Security benefits

13  only if the ALJ's decision is based on legal error or not supported by substantial evidence

14  in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). The

15  ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and

16  resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039

17  (9th Cir. 1995). Although the Court is required to examine the record as a whole, it may

18  neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v.*

19  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more

20  than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v.*

21  *Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). The Court "may not reverse an ALJ's

22

1    decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111

2    (9th Cir. 2012).

3    **A.     The ALJ *De Facto* Reopened Plaintiff's Prior Claim**

4            Plaintiff argues the ALJ erred in failing to address whether to reopen a prior

5    administrative claim Plaintiff filed.  Pl. Op. Br. (Dkt. # 9) at 15–17.  Plaintiff also argues

6    the ALJ erred by failing to advise him of his right to request reopening of his prior

7    application.  *Id.*  Plaintiff applied for disability benefits in March 2015, alleging the same

8    onset date he alleged in the present application.  *See* AR at 317.  That claim was denied

9    by ALJ Mauer on August 30, 2016.  *See* AR at 317–28.  The Appeals Council denied

10   review on November 15, 2016.  AR at 330–32.  Plaintiff did not request reopening of that

11   claim, but filed a new application on September 18, 2017.  *See* AR at 336, 421–22.

12           The ALJ did not explicitly address Plaintiff's prior application, but found that

13   Plaintiff satisfied the presumption of continuing nondisability set forth in *Chavez v.*

14   *Bowen*, 844 F.2d 691 (9th Cir. 1988).  *See* AR at 17.  The ALJ also analyzed Plaintiff's

15   claims using the same onset date as the prior application.  *See* AR at 17–29.  "[W]hen an

16   ALJ later considers 'on the merits' whether the claimant was disabled during an already-

17   adjudicated period . . . [the] ALJ *de facto* reopens the prior adjudication . . . ."  *Lewis v.*

18   *Apfel*, 236 F.3d 503, 510 (9th Cir. 2001) (citing *Lester v. Chater*, 81 F.3d 821, 827 n. 3

19   (9th Cir. 1995)).  The ALJ considered on the merits the already-adjudicated period here,

20   and thus *de facto* reopened Plaintiff's prior application.

21

22

1

**B.       The ALJ Partially Erred in Discounting Plaintiff's Testimony**

2

Plaintiff argues the ALJ erred in discounting Plaintiff's symptom testimony.  Pl.

3

Op. Br at 9–14.  Plaintiff testified that he has mental limitations stemming from PTSD,

4

including trust issues.  *See* AR at 287–88.  Plaintiff testified that he has physical

5

limitations, including neck and back pain.  *See* AR at 289–90, 294, 447, 454.  He testified

6

that he gets pain down either leg if he rotates his hips too much, which can cause him to

7

lose his balance.  *See* AR at 289–90, 454.  He testified that he has neck problems, which

8

cause his right arm to go numb and his shoulder to drop.  *See* AR at 294, 447.  He

9

testified that he has to rest for three to five days after caring for his son, which he does

10

Friday to Sunday each week.  AR at 295.  He testified that he has four migraines a month,

11

which last for six to eight hours.  *See* AR at 296, 455.  Plaintiff testified that he needs to

12

take his medicine and lay down in a dark spot in his room.  *Id.*

13

The Ninth Circuit has "established a two-step analysis for determining the extent

14

to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871

15

F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has

16

presented objective medical evidence of an impairment that "'could reasonably be

17

expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v.*

18

*Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  At this stage, the claimant need only

19

show that the impairment could have caused some degree of the symptoms; he does not

20

have to show that the impairment could reasonably be expected to cause the severity of

21

the symptoms alleged.  *Id.*  The ALJ found that Plaintiff met this step because his

22

1  medically determinable impairments could reasonably be expected to cause the

2  symptoms he alleged.  AR at 23.

3    If the claimant satisfies the first step, and there is no evidence of malingering, the

4  ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing

5  reasons for doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678

6  (quoting *Garrison*, 759 F.3d at 1014–15).  In evaluating the ALJ's determination at this

7  step, the Court may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885

8  F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial

9  evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's

10  testimony fail.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

11    The ALJ discounted Plaintiff's testimony regarding both his physical and mental

12  impairments.  *See* AR at 23–25.  The ALJ reasoned that Plaintiff's testimony regarding

13  his physical symptoms was inconsistent with the medical evidence, and Plaintiff's

14  activities of daily living.  *See id.*  The ALJ reasoned that Plaintiff's testimony regarding

15  his mental symptoms was inconsistent with the medical evidence.  *See* AR at 24.

16    **1. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony Regarding the Severity of His Physical Symptoms**

17

18    The ALJ found that Plaintiff's testimony regarding his physical symptoms was

19  inconsistent with the medical evidence and Plaintiff's activities of daily living.  *See* AR at

20  23–25.  The ALJ explained that Plaintiff's testimony was inconsistent with the medical

21  evidence because that showed only mild symptoms, minimal, conservative treatment, and

22  improvement.  *See id.*

1    The ALJ erred in rejecting Plaintiff's physical symptom testimony based on

2    allegedly mild symptoms.  Although an ALJ may consider the medical evidence in

3    evaluating the severity of a claimant's pain, "'an [ALJ] may not reject a claimant's

4    subjective complaints based solely on a lack of objective medical evidence to fully

5    corroborate the alleged severity of pain.'"  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th

6    Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)) (alteration in

7    original); *see also* 20 C.F.R. § 404.1529(c)(2).  The ALJ acknowledged that Plaintiff's

8    providers found decreased range of motion and disc space narrowing in his neck, as well

9    as neuroforaminal narrowing in his low back.  *See* AR at 23.  That Plaintiff demonstrated

10   normal muscle strength and gait was not enough to contradict Plaintiff's testimony

11   regarding the severity of his pain.  *See id.*

12   The ALJ did not err, however, in rejecting Plaintiff's physical symptom testimony

13   based on his receipt of minimal and conservative treatment.  An ALJ may discount the

14   claimant's testimony when the "'level or frequency of treatment is inconsistent with the

15   level of complaints.'"  *Molina*, 674 F.3d at 1113 (quoting Social Security Ruling ("SSR")

16   96–7p, 1996 WL 374186, at *7 (July 2, 1996)).[2]  The ALJ noted that there were no

17   treatment notes from the onset date through July 2015, and no notes addressing treatment

18   of Plaintiff's back or neck until August 2015.  *See* AR at 23.  Plaintiff was referred to

19

20   ───────────────

      [2] SSR 96–7p has been superseded by SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017).

21   SSR 16–3p nonetheless retains language providing that an ALJ may discount a claimant's
      testimony "if the frequency or extent of the treatment sought by an individual is not comparable

22   with the degree of the individual's subjective complaints." *Id.* at *9.

1   physical therapy for his neck, and received an epidural steroid injection for his low back

2   pain.  *See* AR at 23, 968–69, 985.  The ALJ reasonably found this to be conservative

3   treatment, out of proportion with Plaintiff's complaints regarding the severity of his

4   physical symptoms.  *See Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016)

5   (upholding the ALJ's rejection of plaintiff's testimony based on receipt of conservative

6   treatment, "which consisted primarily of minimal medication, limited injections, physical

7   therapy, and gentle exercise"); *Veliz v. Colvin*, No. EDCV 14–0180–JPR, 2015 WL

8   1862924, at *8 (C.D. Cal. Apr. 23, 2015) (holding that a single steroid injection did not

9   undermine the ALJ's finding that plaintiff received conservative treatment); *Gonzales v.*

10  *Comm'r of Soc. Sec. Admin.*, No. CV 14–0078–JPR, 2015 WL 685347, at *11 (C.D. Cal.

11  Feb. 18, 2015) (same).

12        Plaintiff has similarly failed to show the ALJ erred in finding that Plaintiff

13  improved with treatment.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)

14  (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party

15  challenging an administrative decision bears the burden of proving harmful error).  The

16  ALJ noted that Plaintiff reported improvement from physical therapy.  *See* AR at 24,

17  863–64, 871, 874, 877.  The ALJ further noted that Plaintiff improved after his low back

18  injection.  *See* AR at 23, 961.  The ALJ reasonably concluded that Plaintiff improved

19  with treatment, and discounted his testimony accordingly.

20        The Court need not decide whether the ALJ erred in rejecting Plaintiff's physical

21  symptom testimony based on his activities of daily living because any error in doing so

22  was harmless.  An error is harmless "where it is 'inconsequential to the ultimate disability

determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ reasonably rejected Plaintiff's physical symptom testimony as inconsistent with the medical evidence, which showed conservative treatment and improvement, and that determination remains valid regardless of the ALJ's evaluation of Plaintiff's activities of daily living.

### 2. The ALJ Harmfully Erred in Discounting Plaintiff's Testimony Regarding the Severity of His Mental Symptoms

The ALJ found that Plaintiff's testimony regarding his mental symptoms was inconsistent with the medical evidence because that showed only mild symptoms and improvement with treatment. *See* AR at 24.

The ALJ erred in rejecting Plaintiff's mental symptom testimony based on allegedly mild symptoms. Again, an ALJ cannot reject a claimant's subjective statements regarding the severity of his symptoms solely because the objective findings do not fully corroborate those statements. *See Rollins*, 261 F.3d at 856. The record documents anxiety and depression, which could cause varying levels of symptoms. *See, e.g.*, AR at 646, 653–55, 657, 661.

The ALJ further erred in finding that Plaintiff's testimony was contradicted by alleged improvement in his mental symptoms. An ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016); *see also Garrison*, 759 F.3d at 1017–18 ("[I]t is error to reject a claimant's

testimony merely because symptoms wax and wane in the course of treatment.  Cycles of

improvement and debilitating symptoms are a common occurrence . . . .").  Plaintiff

reported that his medication was helpful, but also reported that he continued to struggle

with anxiety.  *See* AR at 646, 648, 1405, 1422.  Moreover, improvement is not the

barometer for disability:  "'There can be a great distance between a patient who responds

to treatment and one who is able to enter the workforce.'"  *Garrison*, 759 F.3d at 1017

n.23 (quoting *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011)).  The ALJ erred in

finding that Plaintiff's reported improvement justified rejecting his mental symptom

testimony, particularly given his continued struggles with anxiety.

In sum, the ALJ did not harmfully err in rejecting Plaintiff's physical symptom

testimony, but did harmfully err in rejecting his mental symptom testimony.

**C.    The ALJ Did Not Harmfully Err in Evaluating the Medical Opinions of Plaintiff's Treating and Examining Doctors**

Plaintiff challenges the ALJ's evaluation of three statements from Plaintiff's

treating and examining doctors.  Pl. Op. Br. at 3–7.  Plaintiff argues the ALJ failed to

address a neuropsychology report from treating doctors Scott Wollman, Ph.D., and Sarah

Noonan, Ph.D., and a letter from treating doctor Albert Kim, M.D.  Pl. Op. Br. at 5–7.

Plaintiff argues the ALJ failed to give adequate reasons for rejecting opinions from

examining doctor Terilee Wingate, Ph.D.  Pl. Op. Br. at 3–4.

**1.    The ALJ Did Not Harmfully Err in Failing to Address Statements from Plaintiff's Treating Doctors**

Dr. Wollman and Dr. Noonan performed a neuropsychology consultation on May

29, 2018.  *See* AR at 176–84.  They did not opine as to any functional limitations, but

1    recommended several forms of treatment Plaintiff should pursue.  *See* AR at 183.  Dr.

2    Kim, Plaintiff's primary care doctor, wrote a letter dated May 30, 2018.  *See* AR at 1100–

3    01.  Dr. Kim noted that Plaintiff had a "long history of chronic pain in his neck and lower

4    back."  AR at 1100.  Dr. Kim explained some of Plaintiff's treatment and mentioned that

5    Plaintiff was "a reasonable patient and has been following recommendations of doctors."

6    AR at 1101.

7            The ALJ did not mention Dr. Wollman and Dr. Noonan's report, or Dr. Kim's

8    letter.  *See* AR at 19–27.  The ALJ nonetheless did not harmfully err.  An ALJ is not

9    required to discuss a doctor's treatment recommendations in evaluating the claimant's

10   RFC.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015)

11   (holding that the ALJ need not consider a treatment recommendation in the absence of

12   identified functional limitations); *Valentine*, 574 F.3d at 691–92 (reasoning that the ALJ

13   is not required to credit or reject a doctor's recommendations for coping with symptoms

14   when those recommendations do not include opinions as to specific functional

15   limitations).  Neither Dr. Wollman and Dr. Noonan's report nor Dr. Kim's letter state

16   anything about Plaintiff's abilities and limitations.  *See* AR at 176–84, 1100–01.  The

17   ALJ therefore did not err in failing to give reasons for rejecting these doctors' statements.

18       **2.     The ALJ Did Not Harmfully Err in Evaluating Dr. Wingate's Opinions**

19           Dr. Wingate examined Plaintiff on May 7, 2015.  *See* AR at 599–603.  Dr.

20   Wingate reviewed Plaintiff's medical records, conducted a clinical interview, and

21   performed a mental status exam.  *See* AR at 599–601.  Dr. Wingate opined that Plaintiff

22   could "understand, remember and learn simple and some complex tasks."  AR at 602.

1    Dr. Wingate opined that Plaintiff had "difficulty sustaining attention to tasks throughout a

2    daily or weekly work schedule without interruption from anxiety and depressed mood."

3    *Id.* Dr. Wingate opined that Plaintiff had some difficulty tolerating stress. *Id.* She

4    opined that Plaintiff could avoid hazards and make work decisions. *Id.* Dr. Wingate

5    opined that Plaintiff could probably work with a supervisor and a few coworkers, but

6    could probably not handle a lot of coworkers or the general public. *Id.*

7         The ALJ found Dr. Wingate's opinions "somewhat persuasive." AR at 26. The

8    ALJ reasoned that Dr. Wingate's opinion on Plaintiff's ability to tolerate stress and

9    sustain attention were inconsistent with her mental status exam findings. *Id.* The ALJ

10   further reasoned that later exams showed normal mood and affect, with no indications of

11   anger or irritability. *Id.* The ALJ last reasoned that "the specific degree of limitation

12   opined by Dr. Wingate is vague" because "[w]hether having 'difficulty' amounts to more

13   than moderate limitation in mental functioning is unclear." *Id.*

14        Plaintiff has failed to show the ALJ harmfully erred in evaluating Dr. Wingate's

15   opinions. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407–09). Although

16   the ALJ's analysis was not free from error, he reasonably interpreted Dr. Wingate's

17   findings. The ALJ explained that because Dr. Wingate assessed Plaintiff as having a

18   global assessment of functioning ("GAF") score[3] of 60, which indicated moderate

19   limitations, he interpreted Dr. Wingate to opine that Plaintiff had no more than moderate

20   ───────────────

21        [3] GAF is a numeric scale from 0 to 100 intended to reflect "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Golden v. Shulkin*, 29 Vet. App. 221, 225 (Vet. App. 2018) (internal citation and quotation marks omitted).

22

1    limitations.  *Id.*  This was a reasonable interpretation of the evidence, and the ALJ thus

2    did not err in evaluating Dr. Wingate's opinions.  *See Thomas*, 278 F.3d at 954.

3    **D.     The ALJ Partially Erred in Rejecting the Lay Witness Testimony**

4            Plaintiff argues the ALJ erred in rejecting lay witness testimony from Rachel

5    Luce.  Pl. Op. Br. at 14–15.  Ms. Luce completed a third-party adult function report,

6    dated November 21, 2017.  *See* AR at 459–66.  Ms. Luce reported that Plaintiff could not

7    lift anything 30 pounds or more, and was unable to engage in any physical activity for

8    long periods of time.  *See* AR at 459.  She reported that Plaintiff had trouble with

9    memory, concentration, and following instructions.  *See* AR at 464.

10          The ALJ rejected Ms. Luce's statements, noting that he gave more weight to

11   opinions from examining doctors Ron Nielsen, M.D., and Gary Gaffield, DO., and

12   nonexamining doctors, Matthew Comrie, Psy.D., and Jon Anderson, Ph.D.  AR at 26–27.

13          In determining disability, "'an ALJ must consider lay witness testimony

14   concerning a claimant's ability to work.'"  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

15   2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

16   The ALJ must "give reasons germane to each witness" before he can reject such lay

17   witness evidence.  *Molina*, 674 F.3d at 1111 (internal citations and quotation marks

18   omitted).  "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557

19   F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

20          Plaintiff has failed to show the ALJ harmfully erred with respect to Ms. Luce's

21   statements about Plaintiff's physical limitations.  *See Ludwig*, 681 F.3d at 1054 (citing

22   *Shinseki*, 556 U.S. at 407–09).  The RFC limited Plaintiff to lifting 20 pounds

1  occasionally and 10 pounds frequently, both of which are lower than Ms. Luce's

2  statement that Plaintiff could only lift 35 pounds maximum. *See* AR at 22, 459. The

3  RFC limited Plaintiff to standing/walking for up to 30 minutes at a time and sitting for up

4  to 60 minutes at a time. *See* AR at 22. The RFC limited Plaintiff to only occasional

5  climbing of ladders ropes, and scaffolds, stooping, and reaching overhead with his left

6  arm. *Id.* Plaintiff has failed to explain how Ms. Luce's statement that Plaintiff is "unable

7  to engage in any physical activity for long periods of time" demands greater limitations.

8  *See* AR at 459.

9      Plaintiff has, however, shown error with regard to Ms. Luce's statements on

10  Plaintiff's mental limitations. The ALJ's only given reason for rejecting Ms. Luce's

11  statements regarding Plaintiff's limitations in memory, concentration, and following

12  instructions is that the ALJ was giving more weight to the statements of Dr. Comrie and

13  Dr. Anderson. *See* AR at 26–27. But those opinions do not entirely contradict Ms.

14  Luce's statements. For example, Ms. Luce stated that Plaintiff has trouble with

15  concentration, and both doctors opined that Plaintiff could maintain concentration,

16  persistence, and pace in two-hour increments. *See* AR at 347, 364. The ALJ did not

17  explain what he believed was the contradiction here, and thus did not give sufficient

18  reasons to reject Ms. Luce's statements regarding Plaintiff's mental limitations.

19  **E.      The ALJ Harmfully Erred in Assessing Plaintiff's RFC**

20      Plaintiff argues the ALJ erred in formulating the RFC, in part by failing to include

21  limitations caused by Plaintiff's alleged migraine headaches and bipolar disorder. Pl. Op.

22  Br. at 7–9. Plaintiff argues the ALJ should have found at step two that migraines and

1    bipolar disorder were severe impairments, and that the ALJ then failed to include

2    limitations from those impairments in the RFC.  *Id.*

3        The Court need not address Plaintiff's argument here because the ALJ must

4    reconsider Plaintiff's RFC on remand in light of his errors in evaluating Plaintiff's mental

5    symptom testimony and the statements from Ms. Luce regarding mental limitations.  *Cf.*

6    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding that ALJ's RFC

7    assessment and step five determination were not supported by substantial evidence where

8    the ALJ's RFC and hypotheticals to vocational expert failed to include all of the

9    claimant's impairments).  Plaintiff can present argument on remand as to whether

10   migraines and bipolar disorder are medically determinable impairments, and whether

11   additional limitations arising from those impairments should be included in the RFC.

12   **F.     Scope of Remand**

13       Plaintiff asks the Court to remand this matter for an award of benefits.  Pl. Op. Br.

14   at 17–18.  Remand for an award of benefits "is a rare and prophylactic exception to the

15   well-established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir.

16   2017).  The Ninth Circuit has established a three-step framework for deciding whether a

17   case may be remanded for an award of benefits.  *Id.* at 1045.  First, the Court must

18   determine whether the ALJ has failed to provide legally sufficient reasons for rejecting

19   evidence.  *Id.* (citing *Garrison*, 759 F.3d at 1020).  Second, the Court must determine

20   "whether the record has been fully developed, whether there are outstanding issues that

21   must be resolved before a determination of disability can be made, and whether further

22   administrative proceedings would be useful."  *Treichler v. Comm'r of Soc. Sec. Admin.*,

1   775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted).  If

2   the first two steps are satisfied, the Court must determine whether, "if the improperly

3   discredited evidence were credited as true, the ALJ would be required to find the

4   claimant disabled on remand." *Garrison*, 759 F.3d at 1020.  "Even if [the Court]

5   reach[es] the third step and credits [the improperly rejected evidence] as true, it is within

6   the court's discretion either to make a direct award of benefits or to remand for further

7   proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

8          The appropriate remedy here is to remand this matter for further administrative

9   proceedings.  Conflicts in the evidence remain that the ALJ must resolve, such as

10  differences between Plaintiff's testimony and the opinions of Dr. Comrie and Dr.

11  Anderson.  *See Andrews*, 53 F.3d at 1039.  Furthermore, the Court is not in a position to

12  translate this evidence into an RFC, nor to determine whether Plaintiff can perform past

13  work or other work.  *See Rounds*, 807 F.3d at 1006 (citing *Stubbs-Danielson v. Astrue*,

14  539 F.3d 1169, 1174 (9th Cir. 2008)) ("[T]he ALJ is responsible for translating and

15  incorporating clinical findings into a succinct RFC.").

16         On remand, the ALJ shall reevaluate Plaintiff's testimony regarding his mental

17  impairments, and Ms. Luce's statements regarding Plaintiff's mental impairments.  The

18  ALJ shall reevaluate at step two whether Plaintiff has any additional severe impairments,

19  reassess Plaintiff's RFC, and reassess the step four and five determinations.  The ALJ

20  shall conduct all further proceedings necessary to reevaluate the disability determination

21  in light of this opinion.

22

1

# VIII.     ORDER

2
Therefore, the Commissioner's final decision is REVERSED and this case is

3
REMANDED for further administrative proceedings under sentence four of 42 U.S.C. §

4
405(g).

5
Dated this 14 day of May, 2020.

6

7

8
BENJAMIN H. SETTLE
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22